JEFFREY B. GARDNER, ESQ. (BAR NO. 115648)
CATHY K. ROBINSON, ESQ. (BAR NO. 226275)
ROBINSON, CHAVEZ, GARDNER & KINCANNON, APC
2100 MAIN STREET, SUITE 330
HUNTINGTON BEACH, CA  92648
TEL: (949) 851-9111
FAX: (949) 851-3935

Attorneys for Plaintiff
GAYLE SAARI

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| GAYLE SAARI, an individual, | CASE NO.: 8:18-cv-216 |
| Plaintiff, | |
| | COMPLAINT FOR DAMAGES |
| vs. | |
| HYGENIC CORP., a Delaware corporation, PERFORMANCE HEALTH, INC., a Pennsylvania corporation, BIOFREEZE, business entity unknown, AND DOES 1 THROUGH 50, | DEMAND FOR JURY TRIAL |
| Defendants. | |

Plaintiff, GAYLE SAARI, (hereinafter referred to as "Plaintiff"), by and through her undersigned attorneys, hereby sues the defendants, HYGENIC CORP., a Delaware corporation ("HYGENIC"), PERFORMANCE HEALTH, INC., a Pennsylvania corporation ("PERFORMANCE"), BIOFREEZE ("BIOFREEZE"), business entity unknown, and DOES 1 through 50 (collectively hereinafter "Defendants"), and alleges as follows:

## **BACKGROUND**

1.     Plaintiff, GAYLE SAARI, brings this action for personal injuries suffered as a proximate result of Defendants HYGENIC, PERFORMANCE, BIOFREEZE and DOES 1-50's negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, sale, and/or post-market surveillance and corrective action of Biofreeze Cold Therapy Pain Relief Gel (hereinafter referred to as the "Biofreeze Product").

2.     Defendants developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold the Biofreeze Product for use in connection with, among other things, arthritis, back pain, sore muscles and joints.

3.     As a result of the defective nature of the Biofreeze Product, those persons who received the product have suffered and/or are at an increased risk of suffering serious and dangerous side effects, including but not limited to chemical burns, infection, skin sores, irritation and/or such other side effects associated with chemical burns, the need for surgery to remedy the effects of the defective product, as well as other severe and permanent health consequences as a result of their defective product.

4.     Consequently, Plaintiff seeks compensatory and punitive damages as a result of Plaintiff's use of the Biofreeze Product, which has caused, may cause, and/or will continue to cause Plaintiff to suffer physical pain, mental anguish, medical, and other expenses.

///

///

1

COMPLAINT FOR DAMAGES

# THE PARTIES

5.     At all times relevant to this matter, Plaintiff was domiciled and resided in the County of Orange, State of California.

6.     Plaintiff is informed and believes, and thereon alleges that HYGENIC is a corporation duly organized and existing under the laws of the state of Delaware, and at all times relevant to this action, designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the Biofreeze Product to be used by consumers throughout the United States, including the state of California.

7.     Plaintiff is informed and believes, and thereon alleges that PERFORMANCE is a corporation duly organized and existing under the laws of the state of Pennsylvania. PERFORMANCE is a wholly owned subsidiary corporation of defendant HYGENIC Corp., and at all times relevant to this action, designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the Biofreeze Product to consumers throughout the United States, including the state of California.

8.     Plaintiff is informed and believes, and thereon alleges that BIOFREEZE is an unknown entity that has its principal place of business in Cuyahoga Falls, Ohio, and at all times relevant to this action, designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the Biofreeze Product to be used by consumers throughout the United States, including the state of California.

9.     The true names and capacities of those Defendants designated as DOES 1 through 50, inclusive, whether individual, corporate, associate or otherwise are unknown to Plaintiff at the time of filing this Complaint, and Plaintiff, therefore has sued said Defendants by such fictitious names.  When the true names, identities or capacities of said fictitiously designated defendants are ascertained, Plaintiff will seek leave of court

2

COMPLAINT FOR DAMAGES

to amend this complaint to insert the true names, identities, and/or capacities of DOE Defendants, together with the proper charging allegations.

10.    Plaintiff believes, and therefore alleges, that each of the unknown Doe Defendants are, in some manner, legally responsible for the events and happenings set forth in this Complaint, and proximately caused injury and damages to Plaintiff, as alleged herein.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over all causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1332 (a) (1) because complete diversity exists between the Plaintiff and all Defendants, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), excluding interest and costs.

12.    Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claim occurred within this judicial district and the Defendants regularly conduct business in this District.

## CORPORATE/ VICARIOUS LIABILITY

13.    Plaintiff is informed and believes and thereon alleges that at all times relevant to this action, each of the Defendants was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, predecessor in-interest, alter ego, joint venturer, and/or other representative of each of the remaining Defendants and was acting in such capacity in undertaking the acts, conduct, and omissions alleged in this Complaint.

14.    Plaintiff is informed and believes and thereon alleges that the corporate form of Defendants was a sham and should be disregarded because there exists and, at all times herein mentioned, there existed a unity of interest in ownership between and among these Defendants such that any individuality and separateness between these Defendants has ceased and/or never existed; in that these Defendants, and each of them are the alter-egos of one another and exerted direction and control over each other. Adherence to the fiction of a separate and independent existence of Defendants, as

3

COMPLAINT FOR DAMAGES

separate entities distinct from one another will permit an abuse of the corporate privilege, sanction a fraud upon plaintiff and other recipients of the Biofreeze Product, and promote injustice. Defendants, and each of them, encouraged, directed, condoned and ratified the negligent, willful, intentional, and wrongful acts, omissions, and conduct of each and all Defendants.

15.    Plaintiff is informed and believes and thereon alleges that at all relevant times, the corporate Defendants have operated as a single business enterprise to achieve a common business purpose. Parent corporations and any wholly-owned subsidiaries were not operated as separate and individual entities, but rather integrated and commingled their resources to achieve a common business purpose.

16.    All of the subsidiaries of Defendant parent corporations were established simply as shells, instrumentalities, and conduits through which the parent conducted its business, and therefore, the corporate fiction must be disregarded to prevent fraud or injustice. Each constituent corporation may be held liable for the obligations incurred by the other component entities since these Defendants operated as a single business enterprise to achieve a common business purpose.

17.    At all times herein mentioned the Defendants, and each of them, were engaged in the business of or were successors in interest to, entities engaged in the business of developing, testing, designing, manufacturing, fabricating, inspecting, marketing, labeling, promoting, packaging, distributing and selling the Biofreeze Product, which was used by Plaintiff Gayle Saari.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

18.    This action involves the Biofreeze Product developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants at all relevant times herein, including without limitations, in May 2017.

19.    The Biofreeze Product is used primarily for temporary relief from aches and pains of sore muscles and joints associated with arthritis, back pain, backache, strains

4

COMPLAINT FOR DAMAGES

and sprains, and is advertised as a "#1 Clinically Recommended" cold therapy pain relief product.

20.     Plaintiff has a hip fracture and is in need of hip replacement surgery, and experiences pain in connection with her hip.

21.     On or near May 21, 2017, Plaintiff applied the Biofreeze Product to her left hip to help with muscle aches and pain, which was the intended purpose of the Biofreeze Product.

22.     Plaintiff applied the Biofreeze Product to her left hip pursuant to the instructions and/or directions on the product's label.

23.     There were no warnings on the Biofreeze Product that said product should not be used in connection with cold or icepacks.  The only warning on the Biofreeze Product was to not use it with heating pads or heat, in order to prevent burn.

24.     Plaintiff applied a cold pack to the area where she had applied the Biofreeze Product, to help with her aches and pain.

25.     Thereafter, Plaintiff experienced a blister erythematous on her upper left thigh, which further resulted in a serious chemical burn that spread throughout, and has essentially poisoned, Plaintiff's body.

26.     Plaintiff immediately sought medical treatment for the conditions arising from the Biofreeze Product, and followed up with multiple urgent care, emergency room, and primary care visits after the incident first occurred.  Plaintiff has been admitted into the hospital on multiple occasions due to the effects of the chemical burn, and complications associated therewith.

27.     For instance, while admitted at the hospital in Fountain Valley, California, Plaintiff's blisters were lanced by the treating physician.

28.     Additionally, on or near June 5, 2017, Plaintiff was referred to the UC Irvine Health center for a skin graft and debridement of the wound.

29.     While admitted at the UC Irvine Health center, the area of the burn on Plaintiff's thigh was tangentially excised with dissection down to healthy viable tissue.

COMPLAINT FOR DAMAGES

The areas excised on the left thigh were measured and totaled 21 sq. cm., and were very deep into Plaintiff's thigh.

30.     As a result of the Biofreeze Product, Plaintiff has suffered a severe chemical burn, persistent ulcers, abscesses, and her wounds frequently ooze blood and are tender.  Additionally, Plaintiff suffered immense physical trauma and injuries, required emergency medical attention and immediate invasive surgery that employed physicians and surgeons to examine, operate, treat and care for her, and did incur hospital, medical and incidental expenses, which exceed $1,000,000, and will continue to incur further medical treatment expenses for the care and treatment of her injuries. Plaintiff has undergone multiple painful medical procedures, hospitalizations, and continues to seek treatment for her injuries.  Plaintiff has been unable to complete her hip replacement surgery and may not do so until the issues with her chemical burn are resolved.  Further as a result of Defendants' product, Plaintiff has suffered immense emotional trauma and suffers from depression and excessive anxiety.

## COUNT I
## PRODUCT LIABILITY – NEGLIGENCE
### (Against All Defendants)

31.     Plaintiff incorporates by reference paragraphs 1 through 30 above, as though fully set forth herein.

32.     Defendants had a duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale, including the duty to take all reasonable steps necessary to manufacture and sell a product that was not defective and unreasonably dangerous to consumers and users of the product.

33.     Defendants were negligent in that they developed, tested, designed, inspected, marketed, labeled, promoted, distributed and sold a defective product known as the Biofreeze Product, knew and were aware of the defects inherent in the product,

6

COMPLAINT FOR DAMAGES

failed to act in a reasonably prudent manner in marketing the product, and failed to provide adequate warnings of the product's defects.

34.    Defendants breached their duty of reasonable care and failed to exercise ordinary care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the Biofreeze Product into interstate commerce, in that Defendants knew and had reason to know that applying the Biofreeze Product created a significant risk of his or her suffering unreasonably dangerous health related side effects, including, but not limited to: chemical burns, skin irritations, skin abrasions, infections, and other severe personal injuries and diseases, which are permanent in nature, including, but not limited to, physical pain and mental anguish, scarring and disfigurement, diminished enjoyment of life, continued medical care and treatment due to chronic injuries/illness proximately caused by the Biofreeze Product, the continued risk of requiring additional medical and surgical procedures including general anesthesia, with attendant risk of life threatening complications.

35.    Defendants acted negligently, inter alia, in the following acts and omissions:

a.    Developing, testing, designing, manufacturing, inspecting, marketing, labeling promoting, distributing and selling the Biofreeze Product without thorough and adequate pre and post-market testing of the product;

b.    Developing, testing, designing, manufacturing, inspecting, marketing, labeling promoting, distributing and selling, the Biofreeze Product while negligently and intentionally concealing and failing to disclose evidence regarding use of the Biofreeze Product, which demonstrated the risk of serious harm associated with the use of said product;

c.    Failure to undertake sufficient tests to determine whether or not the Biofreeze Product was safe for its intended use,

7

COMPLAINT FOR DAMAGES

d.  Failure to disclose and warn regulatory agencies, the medical community, and consumers that Defendants knew and had reason to know that the Biofreeze Product was indeed unreasonably unsafe and unfit for use by reason of product's defect and risk of harm as discussed herein;

e.  Failing to warn Plaintiff, the healthcare community, and consumers that the product's risk of harm was unreasonable;

f.  Failing to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would prescribe, use the Biofreeze Product;

g.  Advertising, marketing and recommending the use of the Biofreeze Product, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of the Biofreeze Product;

h.  Representing that the Biofreeze Product was safe for its intended use when in fact, Defendants knew and should have known the product was not safe for its intended purpose;

i.  Failing to disclose to and inform the medical community and consumers that other forms of safer and effective treatments were available for use to treat the conditions for which the Biofreeze Product was manufactured;

j.  Continuing manufacture and sale of the Biofreeze Product with the knowledge that said product was dangerous and not reasonably safe;

k.  Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Biofreeze Product so as to avoid the risk of serious harm associated with the use of the Biofreeze Product;

COMPLAINT FOR DAMAGES

l.    Failing to ensure the product was accompanied by proper and accurate warnings about possible adverse side effects associated with the use of the Biofreeze Product and that the Biofreeze Product had a known high risk of causing chemical burns and the associated injuries described in this Complaint, which could be life threatening and permanent;

m.    Failing to conduct adequate testing, including post-marketing surveillance to determine the safety of the Biofreeze Product; and

n.    Failing to establish an adequate quality assurance program used in manufacture of the Biofreeze Product.

36.    Defendants knew and should have known that it was foreseeable that consumers such as Plaintiff would suffer injuries as a result of Defendants' failure to exercise ordinary care in the development, testing, design manufacture, inspection, marketing, labeling, promotion, distribution and sale of the Biofreeze Product.

37.    As a direct and proximate result of the duties breached, the Biofreeze Product used by Plaintiff in relation to her sore muscles and joints resulted in the Plaintiff suffering serious injury, pain, harm, and damages.

38.    The Defendants' conduct in continuing to market, sell and distribute the Biofreeze Product despite knowledge of its propensity to cause serious chemical burns to consumers, such as Plaintiff, shows complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter the Defendants and others from similar conduct in the future.

39.    As a result of the foregoing acts and omission, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Based upon information and belief, Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will

9

COMPLAINT FOR DAMAGES

continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT II
## PRODUCT LIABILITY – DEFECTIVE DESIGN
### (Against All Defendants)

40.   Plaintiff incorporates by reference paragraphs 1 through 39 above, as though fully set forth herein.

41.   At all times relevant to this action, Defendants developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce the Biofreeze Product that was used by Plaintiff.

42.   The Biofreeze Product was expected to, and did, reach its intended consumers, handlers without substantial change in the condition in which the product was developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce by Defendants.

43.   At all times relevant to this action, the Biofreeze Product was developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce in a defective and unreasonably dangerous condition, for use by Plaintiff and all other consumers.

44.   The Biofreeze Product, as developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce by Defendants was inherently defective, in that its foreseeable risks of harm exceeded its claimed benefits.

10

COMPLAINT FOR DAMAGES

45.   The Biofreeze Product, as developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce by Defendants was defective in design and formulation, because when it left the hands of said Defendants, the product was unreasonably dangerous and was also more dangerous than expected by the ordinary consumer.

46.   At all times relevant to this action, Defendants knew and had reason to know that the Biofreeze Product was inherently defective and unreasonably dangerous as developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce by them and when used by Plaintiff the healthcare community, and other consumers in the intended and reasonably foreseeable manner.

47.   Plaintiff used the product for the purpose intended by Defendants and in a manner normally intended to be used, namely for sore muscles, joints and back pain. Defendants had a duty to design, create, manufacture, and fabricate a product that was not unreasonably dangerous for its normal, common, intended use.

48.   Defendants developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce a defective product that created an unreasonable risk of serious harm to the health, safety, and wellbeing of Plaintiff and other consumers. Defendants are therefore strictly liable for the injuries and damages sustained by Plaintiff proximately caused by his use of the Biofreeze Product.

49.   Plaintiff could not have, by the exercise of reasonable care, discovered the Biofreeze Product's defective condition or perceived its unreasonable dangers prior to her use of the product.

50.   The Biofreeze Product, as developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce by Defendants was defective due to the Biofreeze Product's inadequate warnings and instructions. Defendants knew, and should have known, and adequately warned that the Biofreeze Product created a risk of serious and dangerous side effects, including, but not

11

COMPLAINT FOR DAMAGES

limited to, chemical burns, skin irritation, skin abrasions, and other serious and severe personal injuries, including death, some of which are permanent in nature.

51.    Notwithstanding their knowledge of the inherently defective and unreasonably dangerous condition of the Biofreeze Product, Defendants failed to adequately warn Plaintiff, or other consumers, of the dangers and risks of harm associated with the use of the Biofreeze Product.

52.    Defendants were aware at the time the Biofreeze Product was developed, manufactured, fabricated, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce that use of the Biofreeze Product would result in an unreasonably high risk of injury as discussed herein.

53.    The Biofreeze Product developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce by Defendants was defective due to inadequate post-marketing surveillance and warnings. Defendants knew and should have known of the existence of risks of serious side effects associated with use of the product, including, but not limited to, chemical burns, skin irritation, skin abrasions, and other serious and severe personal injuries, including death.

54.    Defendants continue to fail to adequately warn of the risks of harm associated with use of the Biofreeze Product and instead continue to advertise, market, label, and promote it to the public and the medical community as safe and effective for treatment of the conditions described herein.

55.    As a result of the foregoing acts and omission, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Based upon information and belief, Plaintiff has lost past earnings and has suffered a loss of earning capacity.

56.    Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and

12

COMPLAINT FOR DAMAGES

damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT III
## PRODUCT LIABILITY – MANUFACTURING DEFECT
### (Against All Defendants)

57.     Plaintiff incorporates by reference paragraphs 1 through 56 above, as though fully set forth herein.

58.     The Biofreeze Product contained a manufacturing defect when it left the possession of Defendants.

59.     Plaintiff used the product in a way that was reasonably foreseeable to Defendants.

60.     As a result of the foregoing acts and omission, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Based upon information and belief, Plaintiff has lost past earnings and has suffered a loss of earning capacity.

61.     Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

///

///

13

COMPLAINT FOR DAMAGES

## COUNT IV

## PRODUCT LIABILITY – FAILURE TO WARN

### (Against All Defendants)

62.     Plaintiff incorporates by reference paragraphs 1 through 61 above, as though fully set forth herein.

63.     Defendants developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold the Biofreeze Product into the stream of commerce and in the course of same, directly advertised and marketed the Biofreeze Product to consumers or persons responsible for consumers, and therefore had a duty to warn of the risk of harm associated with the use of the Biofreeze Product.

64.     Defendants did not put any warnings on the Biofreeze Product not to use the product in connection with cold packs or ice, and this is not something that is commonly known by consumers such as Plaintiff.

65.     At the time the Biofreeze Product was developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold into the stream of commerce, and more specifically at the time Plaintiff applied the Biofreeze Product, the Biofreeze Product was defective and unreasonably dangerous when put to their intended and reasonably anticipated use, namely for use to ease muscle, joint and back pain.

66.     Defendants failed to adequately warn of the Biofreeze Product's known or reasonably scientifically knowable dangerous propensities, and further failed to adequately provide instructions on the safe and proper use of the Product.

67.     Prior to the manufacture, inspection, marketing, labeling, promotion, distribution and sale into the stream of commerce, and any recall of the Biofreeze Product, Defendants knew or should have known of the risk of substantial and potentially life threatening danger associated with the intended and reasonably foreseeable use of the Biofreeze Product. This known and knowable danger consisted of, chemical burns, skin irritations, skin abrasions, and poisoning of the body. Yet

14

COMPLAINT FOR DAMAGES

Defendants negligently, knowingly, willfully, intentionally, and wrongfully failed to provide adequate warnings to Plaintiff, the healthcare community, or other consumers, of this known and reasonably scientifically knowable danger.

68.     Defendants failed to provide any warning, labels, or instructions regarding the dangerous propensities of the Biofreeze Product mentioned herein that were known or reasonably knowable at the time of distribution. Defendants also failed to provide timely updated warnings, labels, or instructions regarding the dangerous propensities of the Biofreeze Product as they became known or knowable after distribution. In violation of their duty to warn of adverse side effects, these Defendants continue to fail to provide any warnings regarding the non-recalled variety of the Biofreeze Product and continue to fail to provide true and accurate warnings regarding the health risks associated with the Biofreeze Product.

69.     The Biofreeze Product warnings, labels, and instructions provided by Defendants at all-times relevant to this action, are and were inaccurate, intentionally misleading, and misinformed and misrepresented the risks and benefits and lack of safety and efficacy associated with the Biofreeze Product.

70.     Defendants failed to perform, establish or otherwise facilitate adequate testing and/or quality assurance programs; either of which would have shown that the Biofreeze Product posed serious and potential life threatening adverse effects and complications.

71.     The health risks associated with the Biofreeze Product as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

72.     The Biofreeze Product, which was designed, manufactured, fabricated, marketed, sold and distributed the into the stream of commerce by Defendants was defective at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

15

COMPLAINT FOR DAMAGES

73.    In or near May 2017, when Plaintiff used the Biofreeze Product, Defendants failed to provide any warnings, instructions, or labels regarding the severity and extent of health risks posed by the Biofreeze Product, as discussed herein.

74.    Plaintiff did not know of the risk of substantial danger associated with the intended and foreseeable use of the Biofreeze Product as described herein until after she experienced severe chemical burns from the product.

75.    Plaintiff used the Biofreeze Product in a normal, customary, intended, and foreseeable manner, namely for use in connection with back, joint and muscle pain.

76.    The defective and dangerous condition of the Biofreeze Product existed at the time they were developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants to distributors and/or healthcare professionals or organizations. At the time Plaintiff used the Biofreeze Product, the Biofreeze Product was in the same condition as when it was developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants.

77.    As a result of the foregoing acts and omission, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Based upon information and belief, Plaintiff has lost past earnings and has suffered a loss of earning capacity.  Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

///

16

COMPLAINT FOR DAMAGES

## COUNT V

## PRODUCT LIABILITY – BREACH OF IMPLIED WARRANTY

### (Against All Defendants)

78.    Plaintiff incorporates by reference paragraphs 1 through 77 above, as though fully set forth herein.

79.    At all times relevant to this action, Defendants and their predecessors and their successors, developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold into the stream of commerce the Biofreeze Product, for use with back, joint and muscle pain, and for uses other than as approved and indicated in the product's instructions, warnings, and labels.

80.    Defendants knew of the intended use of the Biofreeze Product, at the time they developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold the product for use by plaintiff, and impliedly warranted the product to be of merchantable quality, and safe and fit for its intended use.

81.    Defendants impliedly represented and warranted to Plaintiff, the healthcare community, and other consumers that the Biofreeze Product was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

82.    The representations and implied warranties made by Defendants were false, misleading, and inaccurate because the Biofreeze Product was defective, unsafe, unreasonably dangerous, and not of merchantable quality, when used as it was marketed and intended to be used.

83.    Plaintiff, the healthcare community, and other consumers reasonably relied on the superior skill and judgment of Defendants as the developers, testers, designers, manufactures, inspectors, marketing, labeling, promoters, distributors, and sellers of the Biofreeze Product, as to whether the Biofreeze Product was of merchantable quality and safe and fit for its intended use, and also relied on the implied warranty of

17

COMPLAINT FOR DAMAGES

merchantability and fitness for the particular use and purpose for which the Biofreeze Product was manufactured and sold.

84.     Defendants placed the Biofreeze Product into the stream of commerce in a defective, unsafe, and unreasonably dangerous condition, and the product was expected to and did reach Plaintiff without substantial change in the condition in which the Biofreeze Product was manufactured and sold.

85.     Defendants breached their implied warranty because the Biofreeze Product was not fit for its intended use and purpose.

86.     As a result of the foregoing acts and omission, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Based upon information and belief, Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VI
## PRODUCT LIABILITY-BREACH OF EXPRESS WARRANTY
### (Against All Defendants)

87.     Plaintiff incorporates by reference paragraphs 1 through 86 above, as though fully set forth herein.

88.     Defendants through their officers, directors, agents, representatives, and written literature and packaging, and written and media advertisement, expressly warranted that the Biofreeze Product was safe and fit for use by consumers, was of

18

COMPLAINT FOR DAMAGES

merchantable quality, did not produce dangerous side effects, and was adequately tested and fit for its intended use.

89.    At the time of making such express warranties, Defendants knew and should have known that the Biofreeze Product did not conform to the express warranties and representations and that, in fact, the Biofreeze Product is not safe and poses serious health risks, of which Defendants did not accurately warn.

90.    As a foreseeable, direct, and proximate result of the breach of the express warranties, Plaintiff suffered and will continue to suffer severe and permanent personal injuries, harm, and economic loss.

91.    Plaintiff, the healthcare community, and other American consumers relied on the express warranties made by Defendants regarding the safety and efficacy of the Biofreeze Product and were reasonable in doing so.

92.    Defendants breached their express warranties because the Biofreeze Product was and continues to be defective and not reasonably safe for its intended purpose.

93.    Defendants expressly represented and warranted to the medical community and consumers, including Plaintiff that the Biofreeze Product was safe and fit for the purposes intended, that it was of merchantable quality, that it did not pose dangerous health risks, that the side effects it did produce were accurately reflected in the warnings, and that it was adequately tested and fit for its intended use.

94.    Defendants knew and should have known that the representations and express warranties were false, misleading, and untrue in that said Defendants knew the Biofreeze Product was not safe and fit for its intended use, and that the Biofreeze Product caused its users serious injuries that were not adequately warned of, identified, or represented by these Defendants.

95.    As a result of the foregoing acts and omission, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur

19

COMPLAINT FOR DAMAGES

such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Based upon information and belief, Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VII

## NEGLIGENT MISREPRESENTATION

### (Against All Defendants)

96.     Plaintiff incorporates by reference paragraphs 1 through 95 above, as though fully set forth herein.

97.     Defendants made false misrepresentations, as previously set forth herein, to Plaintiff and other consumers, including without limitation, the misrepresentation that the Biofreeze Product was safe, fit, and effective for use in its intended and reasonably foreseeable manner.

98.     Defendants made the foregoing representations without reasonable grounds for believing them to be true. These representations were made directly by Defendants, their authorized agents, including sales agents, and in publications and other written materials directed to the public, with the intention of inducing Plaintiff, the healthcare community, and other consumers to rely on these representations and purchase and use the Biofreeze Product.

99.     The foregoing representations by Defendants were in fact false. The Biofreeze Product was not safe, fit, and effective for human use in its intended and reasonably foreseeable manner, the use of the Biofreeze Product is hazardous to the

COMPLAINT FOR DAMAGES

user's health, and said product has a serious propensity to cause users to suffer serious injuries, including without limitation, the injuries Plaintiff suffered.

100.   In reliance upon the false and fraudulent misrepresentations and omissions made by Defendants; Plaintiff, the healthcare community, and other consumers were induced to, and did use the Biofreeze Product, thereby causing those persons implanted, including Plaintiff, to sustain severe and permanent personal injuries and damages. Defendants knew and had reason to know that Plaintiff, the healthcare community, and other consumers did not have the ability to determine the true facts intentionally and/or negligently concealed and misrepresented by them in prescribing and implanting the Biofreeze Product, and would not have, respectively, prescribed and implanted same, if the true facts regarding the Patch had not been concealed and misrepresented by Defendants.

101.   Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who use the product.

102.   Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the Biofreeze Product, Plaintiff was unaware of said Defendants' fraudulent misrepresentations and omissions.

103.   Plaintiff, the healthcare community, and other consumers reasonably relied upon Defendants' the misrepresentations made by Defendants where knowledge of the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the Biofreeze Product.

104.   Defendants knew when they made the aforementioned representations that the representations were false. Defendants intended that Plaintiff, the healthcare community, and other consumers would reasonably rely on the representations. Plaintiff, the healthcare community, and other consumers did rely on these representations and purchased and used the Biofreeze Product, all to detriment of those whom the product was used, including Plaintiff. In this context, Defendants' conduct constituted malice,

21

COMPLAINT FOR DAMAGES

oppression, and fraud. Plaintiff is therefore intended to recover punitive or exemplary damages.

105.   As a result of the foregoing acts and omission, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Based upon information and belief, Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VIII
## FRAUD AND DECEIT
### (Against All Defendants)

106.   Plaintiff incorporates by reference paragraphs 1 through 105 above, as though fully set forth herein.

107.   Defendants from the time the Biofreeze Product was first developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed, sold and up to the present, willfully deceived Plaintiff and other consumers by concealing from them and misrepresenting to them, the true facts concerning the Biofreeze Product, which Defendants, as the developers, designers, manufacturers, inspectors, labelers, promoters, distributors and sellers had a duty to disclose.

108.   Defendants negligently, knowingly, willfully, wrongfully, and intentionally concealed certain material facts, as previously set forth herein, from Plaintiff, the healthcare community, and other consumers, including without limitation, failing to

COMPLAINT FOR DAMAGES

disclose that the Biofreeze Product was not safe, fit, and effective for use in connection with back, joint and muscle pain, despite being aware at all relevant times of the dangerous and defective nature of the Biofreeze Product, as described in this Complaint.

109.   Defendants intentionally and fraudulently concealed the following material information:

a.   Defendants knew and should have known that the Biofreeze Product could or would cause severe chemical burns, yet failed to warn about said use;

b.   Risk of adverse events with the Biofreeze Product was not adequately tested prior to marketing of the product, nor sufficiently monitored post-market introduction;

c.   The Biofreeze Product was defective, and caused dangerous and adverse side effects, including, but not limited to the specific injuries specifically described elsewhere in this Complaint.

d.   The Biofreeze Product was negligently and defectively manufactured.

e.   The Biofreeze Product was negligently and defectively designed.

f.   Defendants were under a duty to disclose to plaintiff the defective design and manufacture of the Biofreeze Product, which design and manufacture heightened the risk of suffering the injuries specifically described in this Complaint and suffered by Plaintiff.

110.   Defendants negligently, knowingly, willfully, wrongfully, and intentionally fraudulently represented, as previously set forth herein, to Plaintiff and other consumers, including without limitation, that the Biofreeze Product was safe, fit, and effective for use despite being aware at all relevant times of the dangerous and defective nature of the Biofreeze Product, as described in this Complaint.

111.   At all times relevant to this action and herein mentioned, Defendants conducted a sales and marketing campaign to promote the sale of the Biofreeze Product

and willfully deceived Plaintiff and other consumers as to the health risks and harmful consequences associated with the use of the Biofreeze Product. Defendants knew and were aware of the foregoing, and that the Biofreeze Product was not safe, fit, and effective for its intended use, that the use of it is hazardous to human health, and that said Product has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff as described in this Complaint.

112.   At all relevant times the Biofreeze Product was not safe, fit, and effective as use of the Biofreeze Product is hazardous to health, and said product has a serious propensity to cause users to suffer serious injuries, including without limitation the injuries Plaintiff suffered.

113.   Defendants intentionally concealed and misrepresented the true facts concerning the Biofreeze Product, although Defendants were bound to disclose the true facts. Defendants concealed and misrepresented the foregoing material facts knowing that they were false. These representations were made directly by Defendants, their authorized agents, including sales agents, and in publications and other written materials directed to the public and the medical community, with the intention of inducing Plaintiffs' and other consumers' reliance, purchase, and use of the Product.

114.   In reliance upon false and fraudulent misrepresentations and omissions made by Defendants, Plaintiff was induced to, and did use the Biofreeze Product, thereby causing Plaintiff to sustain severe and permanent personal injuries and damages. Defendants knew and had reason to know that Plaintiff and other consumers did not have the ability to determine the true facts intentionally concealed and misrepresented by them in connection with the use of the Biofreeze Product.

115.   Defendants had sole access to material facts concerning the defective nature of the Biofreeze Product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who used the product.

24

COMPLAINT FOR DAMAGES

116.   At the time Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the Biofreeze Product, Plaintiff was not aware of the Defendants' fraudulent misrepresentations and omissions.

117.   Plaintiff, the healthcare community, and other consumers reasonably relied upon Defendants' misrepresentations, where knowledge of the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the Biofreeze Product.

118.   Defendants knew when they made the aforementioned representations that the representations were false. Defendants intended that Plaintiff would reasonably rely on the representations. Plaintiff did rely on these representations and purchased and used the Biofreeze Product, all to her detriment. In this context, Defendants' conduct constituted malice, oppression, and fraud.

119.   As a result of the foregoing acts and omission, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Based upon information and belief, Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

///

///

///

///

25

COMPLAINT FOR DAMAGES

## COUNT IX
## STRICT LIABILITY
### (Against All Defendants)

120.   Plaintiff incorporates by reference paragraphs 1 through 119 above, as though fully set forth herein.

121.   At all relevant times herein, Defendants have been the manufacturers and distributors of the Biofreeze Product.

122.   The Biofreeze Product was used for its intended purpose by Plaintiff.

123.   The Biofreeze Product was defective when marketed as a result of a manufacturing defect, inadequate warnings and that the product fell well below the expectations of consumers.

124.   As a result of the Biofreeze Product, Plaintiff suffered immense physical trauma and injuries, required emergency medical attention and immediate invasive surgery that employed physicians and surgeons to examine, operate, trat and care for her and did incur hospital, medical and incidental expenses, and will continue to incur further medical treatment expenses for the care and treatment of her injuries.

125.   Further as a result of Defendants' product, Plaintiff has suffered immense emotional trauma and suffers from depression and excessive anxiety.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## PUNITIVE DAMAGES ALLEGATIONS
### (Against All Defendants)

126.   Plaintiff incorporates by reference paragraphs 1 through 125 above, as though fully set forth herein.

127.   Plaintiffs are entitled to an award of punitive and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total reckless disregard for the public safety and

COMPLAINT FOR DAMAGES

welfare. Defendants intentionally and fraudulently misrepresented facts and information to both the healthcare community and the general public, including Plaintiff, by making intentionally false and fraudulent misrepresentations about the safety and efficacy of the Biofreeze Product. Defendants intentionally concealed the true facts and information regarding the serious risks of harm associated with said product, despite Defendants' knowledge and awareness of the serious and permanent side effects and risks associated with use of same.

128.   Defendants had knowledge of, and were in possession of evidence demonstrating that, the Biofreeze Product caused serious physical side effects. Defendants continued to market said product by providing false and misleading information with regard to the product's safety and efficacy to the regulatory agencies, the medical community, and consumers of the Biofreeze Product, notwithstanding Defendants' knowledge of the true serious side effects of the Biofreeze Product,

129.   Defendants failed to provide accurate information and warnings to the community that would have dissuaded consumers from using the Biofreeze Product, thus depriving consumers from weighing the true risks against the benefits of the Biofreeze Product.

130.   As a direct, proximate, and legal result of Defendants' acts and omissions a described herein, and Plaintiff's implantation with Defendants' defective product, Plaintiff suffered, and will continue to suffer, the injuries and damages described in this complaint.

WHEREFORE, Plaintiffs demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against each of the Defendants as follows:

COMPLAINT FOR DAMAGES

A.    Judgment be entered against all Defendants on all causes of action of this Complaint;

B.    Plaintiff be awarded her full, fair, and complete recovery for all claims and causes of action relevant to this action;

C.    Plaintiff be awarded general damages according to proof at the time of trial;

D.    Plaintiff be awarded medical and other special damages, past, present, and future, according to proof at the time of trial;

E.    Plaintiff be awarded punitive damages in accordance with the law;

F.    Awarding pre-judgment and post-judgment interest to the Plaintiff;

G.    Awarding the costs and the expenses of this litigation to the Plaintiff;

H.    Awarding reasonable attorneys' fees and costs to the Plaintiff as provided by law;

I.    Granting all such other relief as the Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a trial by jury on all Counts and as to all issues.

ROBINSON CHAVEZ, GARDNER & KINCANNON,
A Professional Corporation

Dated: February 5, 2018      By:   /s/ Cathy K. Robinson, Esq.
                                   Cathy K. Robinson, Esq.
                                   Attorneys for Plaintiff
                                   GAYLE SAARI

28

COMPLAINT FOR DAMAGES